IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

ELSIE ROACH                                                                                          PLAINTIFF

vs.                                        Civil No. 1:08-cv-01038

MICHAEL J. ASTRUE                                                                              DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Elsie Roach ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff filed her application for DIB on February 27, 2004. (Tr. 14, 64-67). Plaintiff alleged she was disabled due to lower back pain and numbness in her left leg and arm.[2] (Tr. 14, 64-

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

[2] In her appeal brief, Plaintiff also alleges she is disabled due to her obesity. (Doc. No. 6, Page 18). However, as noted by Defendant, Plaintiff did not raise this issue in her application to the SSA or at the administrative hearing. Therefore, the ALJ was not required to consider her obesity. *See Battles v. Shalala,* 36 F.3d 43, 45 n.2 (8th Cir. 1994) (noting that as a general rule, the ALJ has no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability) (citation omitted). Furthermore, under the circumstances of this case, this Court does not see a need to raise this issue *sua sponte. See id.* Accordingly, this Court finds the ALJ did not err by failing to consider Plaintiff's obesity as a basis

67, 96). Plaintiff alleged an onset date of July 9, 2003. (Tr. 64). This application was initially denied on May 4, 2004 and was denied again on reconsideration on July 14, 2004. (Tr. 43-46). On July 23, 2004, Plaintiff requested an administrative hearing on her application. (Tr. 57). This hearing was held on April 11, 2005. (Tr. 303-328). On September 20, 2005, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (Tr. 255-269). On September 27, 2005, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision, and on January 3, 2006, the Appeals Council remanded Plaintiff's case to the ALJ. (Tr. 273-278).

Thereafter, on May 1, 2006, the ALJ held a second administrative hearing. (Tr. 329-376). Plaintiff was present and was represented by counsel, Denver Thornton, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") Tyra Watts testified at this hearing. *See id.* On the date of this hearing, Plaintiff was forty-six (46) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2009), and had completed one year of college. *See id.*

On October 23, 2006, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB. (Tr. 14-21). In this decision, the ALJ determined Plaintiff had met the insured status requirements of the Act through December 31, 2008. (Tr. 16, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since July 9, 2003, her alleged onset date. (Tr. 16, Finding 2). The ALJ determined Plaintiff had the following severe impairments: back and neck pain along with numbness within the extremities. (Tr. 16, Finding 3). The ALJ also determined, however, that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 16, Finding 4).

---

for disability.

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined her RFC. (Tr. 17-20). First, the ALJ evaluated Plaintiff's subjective complaints pursuant to the requirements of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and found her claimed limitations were not totally credible. (Tr. 17-20). Second, the ALJ determined, based upon this review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, that Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds the claimant has residual functional capacity to lift/carry 20 pounds occasionally; sit 6 hours in an 8 hour day; and stand/walk 6 hours in an 8 hour day. Manipulative limitations involve occasional gripping and fine manipulations with frequent reaching, handling, feeling, and pushing/pulling. She has no limitation seeing and hearing but is unable to perform tasks involving vibration. Finally, the claimant experiences mild to moderate pain with use of over the counter medication and can occasionally climb, balance, stoop, crouch, kneel, and crawl.

(Tr. 17, Finding 5).

The ALJ then determined Plaintiff would be unable to perform her Past Relevant Work ("PRW"). (Tr. 20, Finding 6). Plaintiff and the VE testified at the administrative hearing regarding this issue. (Tr. 329-376). Based upon this testimony, the ALJ determined Plaintiff's PRW included work as a nursery supervisor (skilled, light). (Tr. 20). The ALJ determined, considering her RFC, that Plaintiff would be unable to perform that PRW. (Tr. 20, Finding 6).

However, the VE also testified that with Plaintiff's limitations, a hypothetical person would able to perform work as a appointment clerk (sedentary, semi-skilled) with 7,400 such jobs in the state of Arkansas and 500,000 such jobs in the nation and as a general clerk (sedentary, semi-skilled) with 25,000 such jobs in the state of Arkansas and 3,000,000 such jobs in the nation. (Tr. 21, 329-376). Based upon this testimony, the ALJ determined, considering Plaintiff's age, education, work experience, and RFC, that there were other jobs existing in significant numbers in the national

economy that Plaintiff could perform. (Tr. 20-21, Finding 10). Thereafter, the ALJ determined Plaintiff had not been under a "disability," as defined by the Act, from July 9, 2003 through the date of the ALJ's decision or through October 23, 2006. (Tr. 21, Finding 11).

On October 30, 2006, Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (Tr. 10). *See* 20 C.F.R. § 404.968. On April 10, 2008, the Appeals Council declined to review the ALJ's unfavorable decision. (Tr. 6-8). On May 16, 2008, Plaintiff filed the present appeal. (Doc. No. 1). The parties consented to the jurisdiction of this Court on May 21, 2008. (Doc. No. 4). Both parties have filed appeal briefs. (Doc. Nos. 6-7). This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the following: (1) the ALJ conducted an improper *Polaski* evaluation; (2) the ALJ erred by failing to consider Plaintiff for a closed period of disability; and (3) the ALJ presented an improper hypothetical to the VE. (Doc. No. 6, Pages 3-20). In response, Defendant argues that the ALJ properly analyzed Plaintiff's subjective complaints and discounted them for legally-sufficient reasons. (Doc. No. 7, Pages 4-13). Defendant argues that Plaintiff is not entitled to a closed period of disability. *See id.* at 13-15. Finally, Defendant argues that the VE's testimony was proper and supports the ALJ's determination that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. *See id.* at 15-18. Because Plaintiff's medical records are relevant to each of Plaintiff's claims, this Court will address these records first and then address each of her arguments for reversal.

  **A.**  **Plaintiff's Medical Records**

As an initial matter, Plaintiff alleges her disability began on July 9, 2003 due to an auto accident. (Tr. 64, 218, 339-340). Therefore, this Court will only consider those medical records dated from July 9, 2003 (her alleged onset date) to October 23, 2006 (the date of the ALJ's hearing decision). *See Pyland v. Apfel,* 149 F.3d 873, 876-77 (8th Cir. 1998); *Pirtle v. Astrue,* 479 F.3d 931, 934 (8th Cir. 2007).

After Plaintiff's auto accident on July 9, 2003, she was treated by her primary care physician Dr. Patrick D. Antoon, M.D. at Magnolia Urgent Care and Family Clinic for back and leg pain. (Tr. 199-218). Thereafter, on July 21, 2003, Dr. Antoon saw Plaintiff for a follow-up appointment to evaluate her back and leg pain and ordered an MRI of her lumbar and C-spine. (Tr. 206, 217). These images were taken on July 25, 2003. (Tr. 128-129). On August 6, 2003, Dr. Antoon examined Plaintiff again during a follow-up appointment, noted that "PT helped" her back and leg

pain,[3] and released Plaintiff to perform light work in three weeks. (Tr. 205). However, Plaintiff's condition did not improve. On August 29, 2003, Dr. Antoon examined Plaintiff again, noted that she still suffered from some back and leg pain, and prescribed a TENS unit for her use. (Tr. 204, 214-216). On October 20, 2003, Plaintiff again reported suffering from back and leg pain and was referred to Dr. Reza Shahim, M.D. for a neurological consultation. (Tr. 203).

On November 3, 2003, Plaintiff was examined by Dr. Shahim as a part of a diagnostic examination. (Tr. 163-164). During this appointment, Dr. Shahim ordered a new MRI of Plaintiff's lumbar spine and C-spine and ordered an EMG of her left arm. (Tr. 144-146, 163-164). On November 13, 2003, Dr. Shahim evaluated these images and recommended that Plaintiff undergo a lumbar microdiskectomy of her lower back. (Tr. 161-162). Dr. Shahim conducted this surgery on January 9, 2004. (Tr. 147-157).

On January 20, 2004, Dr. Shahim noted that Plaintiff was status post lumbar diskectomy, reported Plaintiff had "done well since the surgery," and reported that her leg pain was "much better." (Tr. 160). Dr. Shahim reported that he was "pleased with her postoperative course" and planned to follow-up with her in several months. *See id.* On March 23, 2004, Dr. Shahim reported that Plaintiff had done "very well since the surgery" and that Plaintiff denied having any back pain. (Tr. 159). Dr. Shahim recommended that Plaintiff "avoid twisting or bending and heavy lifting for the next 2-3 months." *See id.* Apart from that restriction, Dr. Shahim placed no further restrictions on Plaintiff and released her to work. *See id.*

On September 2, 2004, Plaintiff sought further treatment from Dr. Antoon for her neck pain. (Tr. 199). On that date, Plaintiff reported suffering from severe neck pain (7 out of 10). *See id.*

---

[3] Plaintiff underwent physical therapy from July 11, 2003 until April 20, 2004 at Central Health Therapy and Rehabilitation. (Tr. 166-178).

7

However, despite these reports of severe neck pain, Plaintiff still did not begin taking prescription pain medication. (Tr. 120-123). Thereafter, Plaintiff waited a year before seeking further medical treatment from Dr. Antoon. Then, after waiting a year and after taking no prescription pain medication for that year, Plaintiff was examined by Dr. Antoon and claimed that she suffered from severe, unbearable back pain. (Tr. 231-238). Dr. Antoon directed Plaintiff to physical therapy, and Plaintiff completed ten days of therapy. (Tr. 239). Plaintiff then claimed that this therapy did not relieve her pain. (Tr. 239). However, despite this reportedly severe pain and the failure of physical therapy, Plaintiff made no plans to follow-up with a physician. (Tr. 239).

On June 8, 2005, Dr. Roshan Sharma, M.D. examined Plaintiff during a consultative examination. (Tr. 225-230). Dr. Sharma evaluated Plaintiff's medical records, noted her lower back pain, and found she had limitations consistent with the ALJ's RFC determination (as stated above).[4] *See id.* On September 6, 2006, Dr. Donald G. Leonard, M.D. also evaluated Plaintiff during a consultative evaluation. (Tr. 247-254). Dr. Leonard found many of the limitations Dr. Sharma had found. (Tr. 254). However, Dr. Leonard also found Plaintiff could only sit, stand, and/or walk for only three to four hours in an eight-hour day, which is inconsistent with the ALJ's RFC determination as noted above. *See id.*

    **B.**    *Polaski* **Evaluation**

Plaintiff claims the ALJ did not properly evaluate her subjective complaints as required by *Polaski*. (Doc. No. 6, Pages 6-16). In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) or from

---

[4] Because the ALJ adopted the limitations as found by Dr. Sharma, this Court will not restate those findings.

20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929.[5] *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See Polaski,* 739 at 1322. The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id.* The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.*; *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski,* 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity.

---

[5] Social Security Regulations 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929 require the analysis of two additional factors: (1) "treatment, other than medication, you receive or have received for relief of your pain or other symptoms" and (2) "any measures you use or have used to relieve your pain or symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." However, under *Polaski* and its progeny, the Eighth Circuit has not yet required the analysis of these additional factors. *See Shultz v. Astrue,* 479 F.3d 979, 983 (2007). Thus, this Court will not require the analysis of these additional factors in this case.

*See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ satisfied the requirements of *Polaski*. In his opinion, the ALJ outlined the *Polaski* factors, analyzed Plaintiff's subjective complaints, and then made the following findings: (1) Plaintiff's EMG study within the upper extremities in July 2003 was normal; (2) Plaintiff underwent a microdiskectomy in January 9, 2004 and her physical therapist noted that post-operatively she was able to perform all exercises with good technique; (3) Dr. Leonard's assessment disclosed Plaintiff's ANA level was negative, no bone abnormalities were detected in her right hand, and she could frequently perform simple grasping, fine manipulation, feeling, and reaching with ability to lift/carry up to 20 pounds occasionally; (4) Plaintiff utilized only over-the-counter pain medication and testimony at the initial hearing revealed she had neither health insurance nor the financial ability to procure medical treatment; and (5) despite allegations of financial concerns, Plaintiff had been able to procure hypertension medication which controlled her blood pressure. (Tr. 19-20).

These findings are sufficient to meet the requirements of *Polaski*, and the ALJ's credibility determination is entitled to deference. *See Lowe,* 226 F.3d at 971-72 (holding that an ALJ is not required to methodically discuss each *Polaski* factor, as long as the ALJ acknowledges and examines those considerations prior to discounting a claimant's subjective complaints).

### C. Closed Period of Disability

Plaintiff claims she should be considered for a closed period of disability. (Doc. No. 6, Pages 16-18). Plaintiff claims her medical records establish she was disabled for at least a year. *See id.* Specifically, Plaintiff claims she was disabled from her alleged onset date of July of 2003 until at least October of 2005. *See id.* In response, Defendant claims Plaintiff did not established she was disabled for a period of at least twelve months and, therefore, is not entitled to a closed period of

disability. (Doc. No. 7, Pages 13-15).

This Court finds Plaintiff is not entitled to a closed period of disability. As reflected by Plaintiff's medical records, her alleged onset date was July 9, 2003, and Dr. Shahim released her to work on March 23, 2004 with only 2-3 months of work restrictions. (Tr. 159). Therefore, *at the very best,* Plaintiff established she was disabled for eleven months (from July of 2003 until June of 2003). This showing is not sufficient to establish twelve months of disability. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Furthermore, as for Plaintiff's other medical records that she relies upon to establish a closed period of disability (the records from Dr. Antoon in 2004 and 2005 and Dr. Leonard in 2006), they appear to be based upon an uncritical acceptance of Plaintiff's subjective complaints, and this Court does not accept them as credible for several reasons.

First, despite her complaints of disabling pain, there is no indication that she was taking anything other than over-the-counter medication during most of the relevant time period.[6] (Tr. 120-123, 298-300). Plaintiff claims she did not take prescription pain medication because she could not afford it. (Doc. No. 6, Pages 12-13). However, as noted by the ALJ, Plaintiff was able to afford prescription medication for her high blood pressure. (Tr. 19). Further, her pharmacy records indicate that her hydrocodone prescription was $5.00 for a seven-day supply (Tr. 298), and Plaintiff has offered no evidence suggesting that she could not afford $5.00 for this prescription pain medication. Finally, Plaintiff has made no showing that she attempted to obtain low-cost or free prescription pain medication. Such a showing is required in the Eighth Circuit before a claimant can argue that his or her failure to obtain medication was excused because of a lack of funds. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992).

---

[6] During her consultative examination with Dr. Leonard on July 10, 2006, Plaintiff reported she was only taking prescription medication for her blood pressure. (Tr. 247-248).

Second, despite her complaints of disabling pain, Plaintiff did not seek consistent medical treatment for her back and leg pain in 2004 and 2005. After her back surgery in January of 2004, Plaintiff appeared to have recovered well. (Tr. 160). After her surgery, Plaintiff did not seek further treatment for her pain until September of 2004 when she was examined by Dr. Antoon. (Tr. 199). Thereafter, Plaintiff waited an *entire year* before seeking follow-up treatment for her pain. (Tr. 231-238). Such a failure to seek follow-up treatment seriously undermines Plaintiff's subjective complaints of pain. *See Shannon v. Chater,* 54 F.3d 484, 487 (8th Cir. 1995) (holding that "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"). Then, even after seeking that follow-up treatment in October of 2005, Plaintiff reported to only ten days of physical therapy and then stopped without any desire to seek further treatment from a physician. (Tr. 239).

Third, Plaintiff's renewed complaints of disabling pain to Dr. Antoon appear to coincide with her request for disability benefits. In January of 2004, Plaintiff underwent back surgery and appeared to recover well. (Tr. 159). In February of 2004, Plaintiff applied for disability benefits but was denied. (Tr. 64-67). By July of 2004, Plaintiff had requested an administrative hearing because her application had been denied at both the initial and reconsideration levels. (Tr. 43-46). After that request, Plaintiff reported to Dr. Antoon that she was suffering from neck pain in September of 2004. (Tr. 199). Then, the ALJ held an administrative hearing and entered an unfavorable disability determination in September of 2005. (Tr. 255-269). After that denial, Plaintiff then decided in October of 2005 to renew her complaints of disability to Dr. Antoon and stated that her pain was unbearable and caused her to be unable to work. (Tr. 236). Based upon the timing of those complaints to Dr. Antoon, this Court cannot find that they are entirely credible. Accordingly, considering these three findings, this Court does not accept the findings in medical records from Dr.

Antoon in 2004 and 2005 and Dr. Leonard in 2006.

### D. Hypothetical to the Vocational Expert

Plaintiff claims the ALJ posed a defective hypothetical to the VE. (Doc. No. 6, Pages 18-19). Specifically, Plaintiff claims that the findings of Dr. Leonard, including his findings regarding Plaintiff's obesity, were not presented to the VE. *See id.* In response, Defendant argues that the ALJ presented a properly-phrased hypothetical to the VE, and the VE's response to that hypothetical provides substantial evidence supporting the ALJ's disability determination. (Doc. No. 7, Pages 15-16).

This Court finds the ALJ properly presented its hypothetical to the VE. As noted above, despite his current complaint that the ALJ's hypothetical was defective, Plaintiff did not properly raise the issue of obesity. Therefore, the ALJ was not required to present that finding to the VE. Also, for the reasons stated above, the ALJ properly determined that Dr. Leonard's other findings should not be adopted. (Tr. 18-20). Additionally, Dr. Leonard is a *consulting* physician and, as such, his opinions are not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d) (2006). This is especially true where, as here, his findings are inconsistent with the record.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 19th day of June, 2009.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE